HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CLMS MANAGEMENT SERVICES LIMITED PARTNERSHIP; ROUNDHILL I, L.P., <br><br> Plaintiffs, <br> v. <br><br> AMWINS BROKERAGE OF GEORGIA, LLC; AMRISC, LLC; C.J.W. & ASSOCIATES, INC.; CERTAIN UNDERWRITERS AT LLOYD'S, <br><br> Defendants. | CASE NO. 3:19-cv-05785-RBL <br><br> ORDER ON DEFENDANTS CERTAIN UNDERWRITERS AT LLOYD'S AND CJW & ASSOCIATES, INC.'S MOTION TO COMPEL ARIBTRATION AND STAY PROCEEDINGS <br><br> DKT. # 22 |

**INTRODUCTION**

THIS MATTER is before the Court on Defendants Certain Underwriters at Lloyd's and CJW & Associates, Inc.'s Motion to Compel Arbitration and Stay Proceedings. Dkt. # 22. This case is an insurance dispute concerning coverage for flood damage to a residential development in Houston, TX, that is owned by Roundhill I, L.P., and managed by CLMS Management Services, L.P. Complaint, Dkt. # 1, at 3. Defendants move to enforce the Policy's mandatory arbitration clause, which requires all disputes be resolved in New York. Policy, Dkt. # 23, Ex. 1, at 37 (26 of 48). However, enforcement of the arbitration clause turns on a clash between two

sources of law: RCW 48.18.200, which bars mandatory arbitration clauses in insurance contracts, and the Convention on the Recognition of Foreign Arbitral Award, Art. II, Sec. 3, which requires U.S. courts to enforce arbitration clauses upon request. At the fulcrum of these two is the McCarran-Ferguson Act, which provides that state insurance law preempts conflicting federal law. The question is whether the Convention—an international treaty implemented by a congressional statute—is preempted by RCW 48.18.200.

For the following reasons, the Court holds that the Convention is not preempted and GRANTS Defendants' Motion to Compel Arbitration and Stay Proceedings.

## BACKGROUND

Plaintiffs' Houston residential development, Roundhill Townhomes, allegedly sustained $5,660,000 worth of damage as a result of Hurricane Harvey in August of 2017. Dkt. # 1, at 3. The property was insured through August 30, 2017 under Commercial Insurance Policy No. AMR-39768-02 with the Lloyd's Underwriters. *Id*.; Policy, Dkt. # 23, Ex. 1, at 5. This Policy constitutes one coverage part of a larger insurance agreement between CLMS and Defendant Amrisc, LLC, which acts as the "program manager for the companies" providing coverage. Policy, Dkt. # 23, Ex. 1, at 5. The agreement with Amrisc effectively creates "a separate contract between the [CLMS] and each of the Underwriters." *Id*. at 8 (1 of 4). CJW, a Florida company, is the third-party claims administrator for the Lloyd's Underwriters. *Id*. at 39 (28 of 48); Dkt. # 1 at 3.

The citizenship of the Lloyd's Underwriters, meanwhile, is a bit more complicated. Plaintiffs allege simply that the Lloyd's Underwriters are "a British business entity with its principle place of business in London, England." Dkt. # 1, at 2. However, as the Eleventh Circuit explained in *Underwriters at Lloyd's, London v. Osting-Schwinn*:

> The Society of Lloyd's, London, is not an insurance company, but rather a British organization that provides infrastructure for the international insurance market. Originating in Edward Lloyd's coffee house in the late seventeenth century, where individuals gathered to discuss insurance, the modern market structure was formalized pursuant to the Lloyd's Acts of 1871 and 1982. . . . Lloyd's itself does not insure any risk. Individual underwriters, known as "Names" or "members," assume the risk of the insurance loss. Names can be people or corporations; they sign up for certain percentages of various risks across several policies. . . .
>
> Names underwrite insurance through administrative entities called syndicates, which cumulatively assume the risk of a particular policy. . . . The syndicates are not incorporated, but are generally organized by Managing Agents, which may or may not be corporations. The Managing Agents determine the underwriting policy for the syndicate and accept risks on its behalf, retaining a fiduciary duty toward the underwriting Names. . . .

613 F.3d 1079, 1083 (11th Cir. 2010).

After their property was damaged, Plaintiffs submitted a claim under the Policy. Dkt. # 1 at 3. Plaintiffs allege that they made inquiries about their claim that went unanswered until CJW sent them a letter in May 2018 stating that the Policy's deductible was $3,600,000. *Id*. Plaintiffs contend that the deductible should instead be $600,000. *Id*. at 4. This disagreement is at the center of Plaintiffs' Complaint. *Id*.

Defendants' Motion to Compel is based on the arbitration provision in the Policy's "Conditions" section. It reads as follows:

> ARBITRATION CLAUSE: All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.
>
> . . .
>
> The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance.
>
> . . .

> The award of the Arbitration Tribunal shall be in writing and binding upon the parties who covenant to carry out the same.

Policy, Dkt. # 23, Ex. 1, at 37 (26 of 48). "Companies" is defined as synonymous with "Underwriters" and "Insurers." *Id*. at 45 (34 of 48).

## DISCUSSION

In most cases, the enforceability of arbitration clauses is governed primarily by Chapter I of the Federal Arbitration Act. *See* 9 U.S.C. §§ 1-16. However, in 1970, the U.S. acceded to the Convention on the Recognition of Foreign Arbitral Awards. Convention Done at New York June 10, 1958, T.I.A.S. No. 6997, 21 U.S.T. 2517, 1970 WL 104417, at *5 (Dec. 29, 1970). Article II, Section 3 the Convention provides that "[t]he court of a Contracting State . . . shall, at the request of one of the parties, refer the parties to arbitration . . . ." *Id*. at *1. Contemporaneous to the U.S.'s accession, the FAA was amended so that Chapter II now implements the Convention in disputes involving foreign parties or related to a foreign state. 9 U.S.C. §§ 210, 202.

In opposition to the FAA, Washington law bars the enforcement of binding arbitration clauses in insurance contracts. *See State, Dep't of Transp. v. James River Ins. Co.*, 176 Wash. 2d 390, 399 (2013) (interpreting RCW 48.18.200(1)(b)). Although the FAA would normally preempt a conflicting state law under the Supremacy Clause, the McCarran-Ferguson Act creates a system of "reverse-preemption" for insurance law. *See United States Dep't of Treasury v. Fabe*, 508 U.S. 491, 501 (1993). Under McCarran-Ferguson, "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). Courts have held that, under the McCarran-Ferguson Act, RCW 48.18.200 preempts Chapter I of the FAA. *See James River*, 176 Wash. 2d at 402;

L*andmark Am. Ins. Co. v. QBE Ins. Corp.*, No. C15-1444 RSM, 2015 WL 12631550, at *6 (W.D. Wash. Dec. 9, 2015).

Plaintiffs argue that the same outcome should apply for Chapter II of the FAA and the Convention. According to Plaintiffs, the Convention is only enforceable in the U.S. through Chapter II of the FAA, which is an "Act of Congress" that is subject to the McCarran-Ferguson Act. *See* 15 U.S.C. § 1012(b). Consequently, because RCW 48.18.200 relates specifically to insurance and would be impaired by applying Chapter II of the FAA, the federal statute is preempted and the Convention is thus unenforceable. Defendants respond that, first, Article II, Section 3 of the Convention is self-executing, which means it does not require Chapter II of the FAA or any other implementing legislation to be enforceable domestically. Second, Defendants contend that, even if the Convention is non-self-executing, Chapter II of the FAA is not an "Act of Congress" within the meaning of the McCarran-Ferguson Act because it implements an international treaty.[1]

**1. Overview of Case Law Analyzing the Convention on the Recognition of Foreign Arbitral Awards and the McCarran-Ferguson Act**

Courts addressing the interplay between the McCarran-Ferguson Act and the Convention have applied divergent reasoning and reached conflicting outcomes. In a brief discussion, the Second Circuit concluded that the entire Convention is non-self-executing and that its implementing legislation is an "Act of Congress" that is preempted by state law under

---

[1] Defendants also argue that Washington law does not apply because the insured property is in Texas and, even if it does, the Policy does not cover "subjects located, resident, or to be performed in" Washington, making RCW 48.18.200 inapplicable. These arguments may have merit but are only raised in Defendants' Reply Brief. Dkt. # 32 at 9-10. As Plaintiffs point out, raising new arguments on reply is disfavored. *See United States v. Puerta*, 982 F.2d 1297, 1300 n.1 (9th Cir. 1992). In any case, addressing these points would require additional briefing and possibly additional evidence. *See* Policy, Dkt. # 23, Ex. 1, at 48 (37 of 48) (stating that the insured "locations" are "specified in the Statement of Values on file with AmRisc . . . ."). Because the Court can decide the Motion on other grounds, the new arguments made on reply will not be considered.

McCarran-Ferguson. *Stephens v. Am. Int'l Ins. Co.*, 66 F.3d 41, 45 (2d Cir. 1995); *see also Foresight Energy, LLC v. Certain London Market Insurance Companies*, 311 F. Supp. 3d 1085, 1097-1101 (E.D. Mo. 2018) (agreeing with *Stephens*). *Stephens* does not explain why the Convention is non-self-executing but appears to rely on the mere existence of Chapter II of the FAA as proof that the Convention requires implementing legislation to be enforceable in the U.S. *See id*. (citing 9 U.S.C. §§ 201–208 (1994)).

The Fifth Circuit reached a contrary conclusion in *Safety National Casualty Corp. v. Certain Underwriters at Lloyd's, London*, 587 F.3d 714 (5th Cir. 2009) (en banc). After hemming and hawing about whether Article II, Section 3 of the Convention is self-executing, *id*. at 721-22, the court bypassed the issue by holding that the phrase "Act of Congress" in the McCarran-Ferguson Act does not include treaties and their implementing legislation because it would make no sense for Congress to "permit state law to preempt implemented, non-self-executing treaty provisions but not to preempt self-executing treaty provisions." *Id*. at 723-24. In another, somewhat confusing explanation, the court also concluded that Chapter II of the FAA only gains substance by referencing the Convention, which means the Convention itself supersedes Louisiana law. *Id*. at 724-25.

In *ESAB Group, Inc. v. Zurich Ins. PLC*, 685 F.3d 376 (4th Cir. 2012), the Fourth Circuit also held that the Convention was enforceable but for different reasons. Although noting that there was "much to recommend" the argument that Section 3 is self-executing, the court similarly avoided this "confus[ing]" issue. *Id*. at 387-88. Instead, the court concluded that Congress did not intend for the McCarran-Ferguson Act's scope to encompass statutes implementing treaties. *Id*. at 389. In reaching this holding, *ESAB Group* relied on the Supreme Court's observation in *American Insurance Association v. Garamendi*, 539 U.S. 396, 428 (2003)

that McCarran-Ferguson only applies to "domestic commerce legislation" and other cases limiting the McCarran-Ferguson Act's reach. *Id.* at 388-89 (citing *Spirt v. Teachers Ins. & Annuity Ass'n*, 691 F.2d 1054, 1065 (2d Cir. 1982) (Title VII not preempted under McCarran-Ferguson); *Stephens v. Nat'l Distillers & Chem. Corp.*, 69 F.3d 1226, 1231 (2d Cir. 1995) (FSIA not preempted)).

Finally, in *Martin v. Certain Underwriters of Lloyd's, London*, the Central District of California squarely held that Section 3 is self-executing. No. SACV101298AGAJWX, 2011 WL 13227729, at *6 (C.D. Cal. Sept. 2, 2011). The court explained that Section 3's use of "the verb 'shall' . . . expressly directs courts to enforce arbitration agreements" and thus gives Section 3 "automatic effect." *Id.* Consequently, because no "Act of Congress" was necessary for the Section 3's enforceability, the Convention was not preempted by California state law under McCarran-Ferguson. *Id.*

## 2. Whether the Convention is Preempted by RCW 48.18.200(1)(b) under the McCarran-Ferguson Act

After reviewing the above-described cases, the Court is most persuaded by *Martin*'s determination that the McCarran-Ferguson Act does not apply to Article II, Section 3 of the Convention because it is self-executing. The Supreme Court "has long recognized the distinction between treaties that automatically have effect as domestic law, and those that—while they constitute international law commitments—do not by themselves function as binding federal law." *Medellin v. Texas*, 552 U.S. 491, 504 (2008). A treaty falls into the former, self-executing category when it "operates of itself without the aid of any legislative provision." *Id.* (quoting *Foster v. Neilson*, 27 U.S. 253, 314 (1829)). In such situations, the treaty is "equivalent to an act of the legislature" and is declared by the Constitution to be "the law of the land." *Foster*, 27 U.S. at 314.

In contrast, a treaty is non-self-executing "when either of the parties [merely] engages to perform a particular act." *Id*. A non-self-executing treaty "addresses itself to the political, not the judicial department," and therefore requires Congress to enact implementing legislation "before it can become a rule for the Court." *Id*. "In sum, while treaties 'may comprise international commitments . . . they are not domestic law unless Congress has either enacted implementing statutes or the treaty itself conveys an intention that it be 'self-executing' and is ratified on these terms.'" *Medellin*, 552 U.S. at 505 (quoting *Igartua–De La Rosa v. United States*, 417 F.3d 145, 150 (C.A.1 2005) (en banc)). A treaty may "contain both self-executing and non-self-executing provisions." *Lidas, Inc. v. United States*, 238 F.3d 1076, 1080 (9th Cir. 2001).

"The interpretation of a treaty, like the interpretation of a statute, begins with its text." *Medellin*, 552 U.S. at 506 (citing *Air France v. Saks*, 470 U.S. 392, 396–397 (1985)). In *Medellin*, the Court analyzed Article 94(1) of the United Nations Charter, which provides that "[e]ach Member of the United Nations undertakes to comply with the decision of the [ICJ] in any case to which it is a party." *Id*. at 508. The Court concluded that the phrase "undertakes to comply" renders the article non-self-executing because "[i]t does not provide that the United States 'shall' or 'must' comply with an ICJ decision" but rather "call[s] upon governments to take certain action." *Id*. (quoting *Committee of United States Citizens Living in Nicaragua v. Reagan*, 859 F.2d 929, 938 (C.A.D.C. 1988)). In other words, "[t]he Article is not a directive to domestic courts." *Id*.

Here, Article II, Section 3 of the Convention commands that "[t]he court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, *shall*, at the request of one of the parties, refer the parties to arbitration." 1970 WL 104417, at *1 (emphasis added). As the court in *Martin*

explained, "[t]he word 'shall' does not leave discretion to the legislative or judicial branches to determine the degree of enforcement." 2011 WL 13227729, at *6. Section 3 contains exactly the type of "directive to domestic courts" that was missing in *Medellin*, making it self-executing. *See* 552 U.S. at 508.

While the Fourth and Fifth Circuits ultimately shied away from this issue, their reasoning is consistent with the Court's conclusion. *ESAB Group* observed that the word "shall" in Section 3 is "indicative of a self-executing treaty provision" according to the Supreme Court. 685 F.3d at 387. And *Safety National* ultimately held that the Convention itself, not its implementing statute, supersedes Louisiana law because "it is by [the FAA's] reference to the Convention that we have a [judicially-enforceable] command." 587 F.3d at 721-22, 725. This type of "command" is also what makes the treaty self-executing.

Both cases declined to explicitly hold that Section 3 is self-executing largely because of a passage from *Medellin* in which the Court listed Chapter II of the FAA as an example of Congress implementing a non-self-executing treaty. 552 U.S. at 521-22. But this brief observation was made in dicta and is not binding. Furthermore, as observed in *Martin* and *Safety National*, it is unclear whether *Medellin* was referring to the entire Convention or only part of it. *See Martin*, 2011 WL 13227729, at *6; *Safety National*, 587 F.3d at 722.

Indeed, it may very well be that Section 3 is the Convention's only self-executing provision. While Section 3 states that "[t]he *court* of a Contracting State . . . shall . . . refer the parties to arbitration," the rest of the Convention's provisions omit the word "court." *See, e.g.*, Convention, Art. III, 1970 WL 104417, at *1 ("Each *Contracting State* shall recognize arbitral awards as binding . . . .") (emphasis added). This means that only Section 3 is directed to the "judicial department," rather than the "political department." *See Foster*, 27 U.S. at 314.

1 | Consequently, *Stephen*'s assumption that the entire Convention is non-self-executing simply
2 | because Congress enacted Chapter II of the FAA is unpersuasive. 66 F.3d at 45 (citing 9 U.S.C.
3 | §§ 201–208).

Because Section 3 is self-executing, it is not an "Act of Congress" that is subject to preemption under the McCarran-Ferguson Act. The Convention controls and the Policy's arbitration clause is not barred by Washington law.

### 3. Enforceability of the Arbitration Clause under the Convention

Although Article II, Section 3 of the Convention is self-executing, Chapter II of the FAA nonetheless limits the Convention's application. *See* 9 U.S.C. § 202. Courts have boiled these limitations down to four requirements: "(1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states." *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 655 (9th Cir. 2009) (quoting *Bautista v. Star Cruises*, 396 F.3d 1289, 1294–95 (11th Cir.2005)). The Convention itself also limits enforcement of arbitration clauses that are "null and void," encompassing "standard breach-of-contract defenses[,] . . . such as fraud, mistake, duress, and waiver, that can be applied neutrally on an international scale." *Bautista*, 396 F.3d at 1302.

The parties do not argue that the Policy is "null and void" and the Court sees no reason why it would be. Furthermore, the first three requirements for applying the Convention are easily satisfied—the parties' insured/insurer-relationship is commercial in nature and governed by a written agreement with an arbitration clause. *See* Dkt. # 23, Ex. 1, at 37 (26 of 48).

The fourth requirement is a little trickier. The Lloyd's Underwriters do not comprise a single foreign company but rather a collection of names and syndicates that could be located anywhere in the world. *See Osting-Schwinn*, 613 F.3d at 1083. Although Defendants claim that "the Policy is subscribed to by numerous foreign entities incorporated under the laws of England and Wales," Motion, Dkt. # 22, at 8, the Policy itself does not identify where each syndicate is from. Dkt. # 23, Ex. 1, at 10 (3 of 4). However, Defendants also argue that their commercial relationship with Plaintiffs has a "reasonable relation to a foreign state" because "the Policy was underwritten through the Lloyd's of London insurance market in London, which was created by and is governed by Parliament." Dkt. # 22, at 8. The Court agrees. CLMS's Policy with the Lloyd's Underwriters is the product of a uniquely foreign insurance market and would not be available from a U.S. company. This is enough to satisfy the fourth requirement for the Policy to fall under the Convention.

This leaves only the question of whether Plaintiffs' claims against CJW, a Florida corporation, should also be sent to arbitration. CJW is not a party to the Policy but serves as the third-party claims administrator for the Lloyd's Underwriters. Motion, Dkt. # 22, at 3; Policy, Dkt. # 23, Ex. 1, at 39 (28 of 48). "[N]onsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). One test for an agency theory of nonsignatory enforcement is whether "the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." *Chastain v. Union Sec. Life Ins. Co.*, 502 F. Supp. 2d 1072, 1081-82 (C.D. Cal. 2007) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).

Although neither party offers any argument on this point, the Court holds that CJW may enforce the Policy's arbitration clause. Plaintiffs allege that CJW informed them of the $3,600,000 deductible—the action that forms the basis of CJW's breach of contract claim against the Lloyd's Underwriters. Dkt. # 1, at 3-4. Plaintiffs' claim thus depends on the close relationship between CJW and the Lloyd's Underwriters that amounts to an agency relationship. It would eviscerate the arbitration clause's effect if CJW was barred from enforcing it.

There is no doubt that Plaintiffs' claims relate to the insurance provided by the Lloyd's Underwriters and therefore fall within the scope of the Policy's arbitration clause. Dkt. # 23, Ex. 1, at 37 (26 of 48). Those claims therefore belong before an arbitration tribunal in New York.

**CONCLUSION**

For the above reasons, Defendants' Motion to Compel Arbitration and Stay Proceedings [Dkt. # 22] is GRANTED.

IT IS SO ORDERED.

Dated this 26th day of December, 2019.

Ronald B. Leighton
United States District Judge